UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

MOESHA JORDAN,

                             Plaintiff,

      -against-

THE CITY OF NEW YORK, a municipal corporation;
POLICE OFFICER CARL KAUFMAN
(Shield Number 24409), SERGEANT CHRISTOPHER
BRABHAM (Shield Number 5400), in his individual and
official capacities; MARCUS CAMERON, in his
individual capacities; POLICE OFFICER JOSEPH
DEBARRO (Shield Number 14108), in his individual and
official capacities; POLICE OFFICER RICHARD
DANESE (Shield Number 12075), in his individual and
official capacities; in his individual and official capacities;
POLICE OFFICER REAZ MOHAMMED
(Shield Number 15379), in his individual and official
capacities; POLICE OFFICER SEAN SALVATORE
(Shield Number 12816), in his individual and official
capacities;

                             Defendants.
-------------------------------------------------------------------------X

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

14-CV-1876 (MKB) (RER)

     Plaintiff, Moesha Jordan, by her attorney, Steven E. Lynch, alleges for her complaint against the defendants as follows:

## PRELIMINARY STATEMENT

    1.    Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of her civil rights guaranteed by the Constitutions of the Unites States and the State of New York.

## JURISDICTION

    2.    This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the

Fourth and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

4. Plaintiff invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over any and all state constitutional or common law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same controversy. Plaintiff has satisfied all procedural prerequisites with respect to her state law claims: Plaintiff served notice of claim upon the City within ninety (90) days of the incident underlying her claims and has otherwise complied with the statutory requirements of the General Municipal Law of the State of New York. Although thirty (30) days have elapsed since service of her initial notice of claim, the City has not adjusted or paid such claim.

## VENUE

5. Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b)(2), in that this is the District in which the events or omissions underlying the claim arose.

## JURY DEMAND

6. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7. The plaintiff is an African-American female and was at all relevant times a citizen of the City and State of New York.

8. Defendant, the City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9. Defendant, the City of New York, maintains the New York City Police

2

Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

10. At all times hereinafter mentioned, the individually named defendants, Sergeant Christopher Brabham, former Police Officer Marcus Cameron, Police Officer Joseph Debarro, Police Officer Richard Danese, Police Officer Carl Kaufman, Police Officer Reaz Mohammed, and Police Officer Sean Salvatore were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties, were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

11. At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

12. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

13. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## **FACTS**

14. On September 19, 2012, at approximately 6:30 p.m., plaintiff sat on the stairs of her apartment building, located at 12 Kingston Avenue, Brooklyn while speaking with neighbors.

3

15. Police Officer Carl Kaufman and Police Officer Reaz Mohammed, told plaintiff that plaintiff had to leave.

16. Plaintiff told Police Officer Cark Kaufman and Police Officer Reaz Mohammed that plaintiff lived in 12 Kingston Avenue.

17. Police Officer Carl Kaufman told plaintiff "if you don't want to move off the steps, come with me."

18. Police Officer Carl Kaufman took out handcuffs and grabbed plaintiff.

19. A neighbor told Police Officer Carl Kaufman not to grab plaintiff because plaintiff was pregnant.

20. Plaintiff stood up and backed up into her building.

21. Police Officer Marcus Cameron pushed plaintiff against a wall causing plaintiff pain in her back and fear for the health of her unborn child.

22. Plaintiff began to cry.

23. Plaintiff was arrested and taken to Woodhull Hospital via ambulance.

24. At Woodhull Hospital, plaintiff was treated for lower back pain and examined for injuries to her unborn child.

25. After her release from Woodhull Hospital, plaintiff was transported to the 79th precinct located at 263 Thompkins Avenue, Brooklyn, New York.

26. On or about September 20, 2012, plaintiff was charged with Penal Law section 195.05 obstructing governmental administration in the second degree, Penal Law section 205.30 resisting arrest, and Penal Law section 240.20(6) disorderly conduct.

27. Subsequently, all charges against plaintiff were adjourned in contemplation of dismissal.

28. As a result, the plaintiff's criminal case was dismissed and sealed.

## FIRST CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Violations for Unlawful Stop*
(Against the Individual Officer Defendants)

29. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "28" with the same force and effect as if fully set forth herein.

30. Defendants violated the Fourth and Fourteenth Amendment because they stopped plaintiff without reasonable suspicion.

31. As a result, plaintiff sustained the damages alleged herein.

## SECOND CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Violations for False Arrest*
(Against the Individual Officer Defendants)

32. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "31" with the same force and effect as if fully set forth herein.

33. As a result of defendants' aforementioned conduct, plaintiff was subjected to an illegal, improper, and false arrest by the defendants. Plaintiff was taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings. In the above-mentioned actions, defendants acted intentionally, willfully, with malice, and without probable cause, privilege or consent.

34. Plaintiff was conscious of her confinement.

35. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, plaintiff was put in fear for her safety, was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

## THIRD CAUSE OF ACTION
42 U.S.C. § 1983 - Fourth Amendment Violation for Excessive Force
(Against the Individual Officer Defendants)

5

36. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "35" with the same force and effect as if fully set forth herein.

37. While in the course of their duties and while acting under color of law, defendants effected a seizure and arrest of plaintiff by intentionally using excessive physical force against plaintiff, including but not limited to pushing plaintiff against a wall.

38. The physical force of the individual officer defendant on plaintiff was objectively unreasonable.

39. The individual officer defendant's use of excessive physical force caused injuries, including but not limited to, pain to the plaintiff's back.

40. By virtue of the foregoing, the defendants deprived the plaintiff of her Fourth Amendment rights under the United States Constitution to be free from unreasonable seizures of her person and are liable to plaintiff under 42 U.S.C. §1983.

### FOURTH CAUSE OF ACTION
*42 U.S.C. § 1983- Fourth Amendment Violations for Failure to Intervene*
(Against the Individual Officer Defendants)

41. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "40" with the same force and effect as if fully set forth herein.

42. Defendants who did not participate in plaintiff's arrest, but observed the unlawful actions alleged herein, had an opportunity to prevent such conduct, and failed to intervene.

43. By virtue of the foregoing, the defendants who failed to intervene deprived the plaintiff of her Fourth Amendment rights under the United States Constitution to be free from unreasonable searches of her person and are liable to plaintiff under 42 U.S.C. §1983

## FIFTH CAUSE OF ACTION
*Municipal Liability*
(Against Defendant City)

44. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "43" with the same force and effect as if fully set forth herein.

45. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeated misconduct by the same officers, same units, and same precincts. In the fiscal year of 2012, there were 2,004 tort cases commenced against the New York City Police Department, up from 1,425 tort cases commenced for the fiscal year of 2008.[1] The City of New York has paid at least $80 million for torts against the New York City Police Department since the fiscal year of 2008, peaking in fiscal year of 2009 when it paid out more than $117 million.[1] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[2]

46. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect

---

[1] Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on January 24, 2014.

[2] "NYPD gives quite the payday; AP report reveals police have dolled out $1B to resolve lawsuits," by Associated Press Writers Colleen Long and Jennifer Peltz via Daily News wire Report, http://www.nydailynews.com/new-york/nypd-payday-ap-report-reveals-police-dolled-1b-resolve-lawsuits-article-1.189671, October 15, 2010 last visited on January 27, 2014.

(citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

47. However, the City of New York has isolated NYPD officers like Police Officer Carl Kaufman and Police Officers John Doe #1-12 from accountability for civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.[3] This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

48. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

---

[3] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/, last visited on January 27, 2014.

8

49. The 79th Precinct of the New York City Police Department has an extensive history of civil rights violations. According to the City Comptroller's Office fiscal year report for 2009, 69 Civilian Complaint Review Board complaints originated in the 79th Precinct.[4] In addition to prior lawsuits, the City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers from the 79th precinct unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.

50. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and false arrest suffered by plaintiff.

51. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

---

[4] "CCRB: Attribution of Complaints to the Housing Bureau 2005 - 2009," https://nycopendata.socrata.com/Public-Safety/CCRB-Attribution-of-Complaints-to-Patrol-Borough-B/zwt9-6u9n, lasted visited on February 15, 2014.

9

52.     All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal.  "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department.  Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

53.     In Floyd v. City of New York, 08-cv-01034-SAS-HBP, Judge Scheindlin found that the City acted with  "deliberate indifference toward the NYPD's practice of making unconstitutional stops and conducting unconstitutional frisks" and adopted "a policy of indirect racial profiling by targeting racially defined groups for stops based on local crime suspect data." (Opinion and Order, dated August 12, 2013, P.13).

54.     The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights.  Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

55.     Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

### SIXTH CAUSE OF ACTION
New York Common Law
(Against all Defendants)

56. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "55" with the same force and effect as if fully set forth herein.

57. By the actions described above, the City and each and every Individual Officer Defendant, jointly and severally, has committed the following wrongful acts against Plaintiff, which are tortious under the laws of the State of New York:

   a. False arrest;

   b. Assault and battery;

58. The foregoing acts and conduct of defendants were a direct and proximate cause of injury and damage to plaintiff and violated the common law rights guaranteed to her by the laws of the State of New York.

### SEVENTH CAUSE OF ACTION
Respondeat Superior
(Against the City of New York)

59. Plaintiff repeats, reiterates, and realleges paragraphs 1 through 58 as if fully set forth herein.

60. The Individual Officer Defendants were employees of the City at the time of the incidents alleged herein and each was acting at all relevant times within the scope of his or her employment with the City.

61. The City is therefore vicariously liable for the tortious acts as described and alleged herein of the Individual Officer Defendants under the common law doctrine of respondeat superior.

62. As a result of the foregoing, plaintiff Moesha Jordan is entitled to compensatory

damages in an amount to be determined by a jury and is further entitled to punitive damages against the individual defendants in an amount to be determined by a jury.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a. Compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. Costs, interest and attorney's fees, pursuant to 42 U.S.C. §1988; and

d. Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.


Dated: New York, New York
     August 1, 2014                           By:    Steven E. Lynch
                                                                 /s/

                                                         Steven E. Lynch
                                                         Attorney for Plaintiff
                                                         The Law Offices of Steven E. Lynch
                                                         233 Fifth Avenue, Suite 4A
                                                         New York, New York 10016
                                                         (T) (718) 858-8737
                                                         (F) (718) 690-3593
                                                         steven@stevenelynch.com